UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
JUANITA BALLARD,
    Debtor.                               No. 7-06-12076 SA

### ORDER DENYING APPROVAL OF REAFFIRMATION AGREEMENT
### WITH MOUNTAIN AMERICA CREDIT UNION

    The reaffirmation agreement with Mountain America Credit Union ("Credit Union") came before the Court on January 23, 2007 for a hearing as required by 11 U.S.C. §524(d).[1] Present were the Debtor Juanita Ballard and counsel for the credit union Will Jeffrey ("Counsel"). The Court reviewed with the Debtor her filings and circumstances, and explained how the bankruptcy process works, including the effect of filing a bankruptcy petition and the effect of the approval of a reaffirmation agreement. In addition, the Court heard on behalf of the credit union the most compelling argument it has yet heard for approving a reaffirmation agreement of this sort.

    Debtor filed her petition on November 13, 2006. She was and still is unrepresented by counsel. The §341 meeting took place on December 18, 2006. Her Statement of Intention (doc 5), prepared for her by a bankruptcy petition preparer, contained what is still in this jurisdiction virtually the standard recitation concerning the vehicle she is purchasing with

---

[1] The Court has subject matter and personal jurisdiction pursuant to 28 U.S.C. §§1334 and 157(b); this is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I) and (O); and these are findings of fact and conclusions of law as required by Rule 7052 F.R.B.P.

financing from a creditor holding a lien on the vehicle: "Debtor will retain collateral and continue to make regular payments." However, she also agreed with the Credit Union to reaffirm the debt, and so the Credit Union submitted to the Court the proposed reaffirmation agreement (doc 16). The case remains open and the discharge is not due to be entered until February 17, 2007 at the earliest.

Among other things, the Court finds that (1) the Debtor has approximately five years of payments left at $152 per month on this 2006 Ford Focus, (2) she has considerable equity in the vehicle, (3) the vehicle continues to be fully insured, including comprehensive coverage, with the credit union named as a loss payee and entitled to notice from the insurance agent if coverage is terminated for any reason, (4) Debtor currently has the resources to make the monthly payments and keep up the insurance payments,(5) the Debtor will almost certainly complete all the payments on time and keep the vehicle insured, (6) the Debtor has a ten-year warranty on the engine and drive train, (7) the hand-written budget Debtor said she was living by is considerably less than the budget shown in her filed Schedule J and probably somewhat too low to be accurate but even Schedules I and J disclose a budget with an excess each month[2], (8) the figures in

---

[2] Debtor's form B22 shows a deficit of $422 per month, but the Debtor's Schedules I and J and the Debtor's hand-written
(continued...)

Case 06-12076-s7    Doc 20    Filed 01/25/07    Entered 01/25/07 11:22:05 Page 2 of 6

Part D do not raise a presumption of undue hardship, and (9) Debtor is a responsible and careful person who filed bankruptcy because of circumstances beyond her control. It therefore appears that, unlike many other cases in which a debtor's chances of staying current on a reaffirmed debt are at best only good to moderate, in this case the Debtor is quite unlikely to default, and if she did default, likely the credit union would (and almost certainly could) resell the vehicle for an amount that exceeded the total debt owed by the Debtor, including all collection costs.

    Counsel for the credit union could not commit that, even were Debtor current on her payments, the insurance in place, and the vehicle continuing to maintain its relatively high value, the credit union would not attempt to repossess the vehicle.[3] And he said that a motion for stay relief might follow a decision by the Court not to approve the reaffirmation agreement.[4] Counsel also

---

[2](...continued)
budget, show a significant, and more realistic, surplus each month.

[3] Debtor posed this question to counsel; the Court specifically refrained from asking the question in this proceeding.

[4] This results from the changes enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-08, 119 Stat. 23. Section 521(a)(6) requires a debtor to turn over the property to the creditor if, within 45 days of the §341 meeting, the debtor either has not redeemed the property or has not "enter[ed] into an agreement with the creditor pursuant
(continued...)

Case 06-12076-s7    Doc 20    Filed 01/25/07    Entered 01/25/07 11:22:05 Page 3 of 6

argued that not approving the reaffirmation agreement had the effect of denying a substantial benefit to the Debtor because of some farfetched concern (the Court's phrase, not counsel's, but the phrase captures the spirit of Counsel's argument) on the part of the Court that something bad might happen to the Debtor.

Nevertheless, the Court finds that it would not be in the best interests of the Debtor to approve the reaffirmation agreement. To begin with, the Court has assumed that the credit union would act in its own enlightened self interest, including pursuing a policy that emphasizes collecting a stream of cash from the Debtor rather than seeking possession of the vehicle. After all, that is what the basic market economics of this transaction are: the Debtor needs a vehicle, the Credit Union needs the income that the Debtor's payments represent, and the equity in the vehicle, the perfected lien, the insurance coverage

---

[4](...continued)
to section 524(c)." The statute then provides that if the debtor fails to perform, the automatic stay is terminated under §362(h) and the property is no longer property of the estate. Section 362(h)(1) requires the debtor, if he or she seeks to retain the property, to elect to either redeem or enter into a reaffirmation agreement and then comply timely with that election. While Debtor's "retain and pay" language in the Statement of Intention may well not comply with the statute (a ruling which the Court need not and does not make in this decision), Debtor clearly has entered into a reaffirmation agreement with the Credit Union, even if the Court does not approve the agreement. In any event the automatic stay will likely end approximately three weeks from now with the issuance of the discharge and the closing of the case. And of course the Court offers no opinion on what would happen were Debtor to resist any repossession effort in state court invoking nonbankruptcy law.

Case 06-12076-s7    Doc 20    Filed 01/25/07    Entered 01/25/07 11:22:05 Page 4 of 6

and Debtor's standing as an excellent customer provide about as high a level of assurance of full payment as is possible short of having all the cash right now.  So it appears highly unlikely that the Credit Union would act against its own interests merely because the statute now allows it to do so.  Of course, nothing in the statute compels the Credit Union not to try to repossess the vehicle, and indeed the Court is well aware that another vehicle financing entity, Ford Motor Credit Company ("FMCC"), has publicly declared a binary policy of repossessing vehicles in all instances where no reaffirmation agreement is effected.[5]  But if it is the case that the Credit Union will maintain the status quo, then the Debtor need not fear an arbitrary attempt by the credit union to repossess the vehicle despite the Debtor's being current on her payments and insurance up to date.[6]  Of course §524(f) permits the two parties to voluntarily continue the purchase arrangement they have in place.  And were something to happen to Debtor such that after reaffirmation became finally

---

[5] This information was communicated to the Court by local counsel for FMCC in a (public) hearing in another case. (Mentioning this fact does not in any way constitute a criticism of FMCC's local counsel, who has always been completely ethical, straightforward and candid with the Court.)  Whether FMCC's policy is economically rational or not is irrelevant to this decision.

[6] To be sure, as FMCC is probably aware, the threat to repossess a vehicle not subject to a reaffirmation agreement is not an incentive for this Court to approve a reaffirmation agreement.

Case 06-12076-s7    Doc 20    Filed 01/25/07    Entered 01/25/07 11:22:05 Page 5 of 6

effective she could not make the payment she bears some risk, albeit slight, of a deficiency judgment after repossession of the vehicle. Thus, on balance, Debtor is at least slightly better off without the risk attendant to the approval of the reaffirmation agreement.[7]

IT IS THEREFORE ORDERED that approval of the proposed reaffirmation agreement between Debtor Juanita Ballard and Mountain America Credit Union (doc 16) is hereby denied.

_____
James S. Starzynski
United States Bankruptcy Judge

COPY TO:

Juanita S. Ballard
7112 Pan American Fwy NE Sp 228
Albuquerque, NM 87109-4209

Will Jeffrey
1212 Pennsylvania NE
Albuquerque, NM 87110-7410

United States Trustee
PO Box 608
Albuquerque, NM 87103-0608

---

[7] The Court by this decision is not saying that it will never approve a reaffirmation agreement. For example, the Court frequently approves reaffirmation agreements which materially reduce the principal balance and interest rate for the debtor, such that the debtor is reobligated on a contract that provides a vehicle at the actual retail value and at a competitive interest rate. The Court of course understands that if a contract is not reaffirmed and the debtor ends up entering into a new contract for another vehicle, that new contract in effect obligates the debtor as the reaffirmation would have.

Case 06-12076-s7    Doc 20    Filed 01/25/07    Entered 01/25/07 11:22:05 Page 6 of 6